UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

LIBERTY MUTUAL INSURANCE
COMPANY and LIBERTY MUTUAL
FIRE INSURANCE COMPANY,

        Plaintiff,        Case No.:
v                                   Honorable

GARAN LUCOW MILLER, PROFESSIONAL
CORPORATION, a Michigan professional
corporation, and M. SEAN FOSMIRE,
an individual,

        Defendants.
_____/
LENNON LAW PLLC
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs, Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, by and through their attorneys, Lennon Law PLLC, for their Complaint against Defendants, state as follows:

## **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Liberty Mutual Insurance Company is incorporated under the laws of, and has a principal place of business in, the Commonwealth of Massachusetts.

2. Plaintiff Liberty Mutual Fire Insurance Company is incorporated under the laws of the State of Wisconsin and has a principal place of business in the Commonwealth of Massachusetts. (Collectively Plaintiffs will be referred to as "Liberty Mutual").

3. Defendant Garan Lucow Miller, Professional Corporation ("Firm"), a law firm, is incorporated as a professional service corporation under the laws of the State of Michigan and has a principal place of business located in the City of Detroit, Wayne County, Michigan. Firm conducts business in the Western District of Michigan.

4. Defendant M. Sean Fosmire ("Fosmire") is an attorney who, upon information and belief, is a resident and citizen of the State of Michigan and who conducts business in the Western District of Michigan. At all relevant times, Fosmire was associated with Firm, which is responsible for the acts of malpractice of Fosmire alleged

herein under the principals of agency, vicarious liability and *respondeat superior*.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000. This Court has jurisdiction over this matter pursuant to 28 USC 1332.

6. This matter arises out of underlying litigation that was litigated in Schoolcraft County, Michigan. Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2), and this case is properly assigned to the Norther Division pursuant to W. D. Mich. LCivR 3.2.

## SWAYER'S ALLEGED PURCHASE OF A CUNA POLICY AND THE 1992 ACCIDENT

7. Francis Swayer ("Swayer") claimed that he purchased a policy of Michigan auto insurance through CUNA Mutual ("CUNA") in the 1990s through his credit union, Limestone Federal Credit Union.

8. Swayer was injured in an automobile accident in 1992 and again in 1996.

9. Swayer claimed that he was a policy holder with CUNA at the time of his 1992 auto accident but was never able to produce a copy of the insurance policy he allegedly purchased with CUNA or a CUNA claim number for the 1992 accident.

## **UNDERLYING LAWSUIT**

10. Although Swayer alleged he was involved in an auto accident in 1992, he waited until April 9, 2012, to file <u>Frances Swayer</u> v <u>Liberty Mutual Fire Insurance Company</u>, Schoolcraft County (Michigan) Circuit Court case no. 12-4523-NF (the "Underlying Lawsuit").

11. Beginning in or about June, 2012, Defendants represented Liberty Mutual in the Underlying Lawsuit, and Defendants represented Liberty Mutual from that time through at least early September, 2015.

12. In the Underlying Lawsuit, Swayer claimed that he was entitled to no-fault benefits through an auto insurance policy which he obtained from CUNA in the early 1990s, and that Liberty Mutual had assumed liability for paying all benefits under that policy.

13. During the entire pendency of their Underlying Lawsuit, Swayer never produced any evidence indicating that he (i) purchased a policy of insurance from CUNA that provided coverage for his 1992 automobile accident, or (ii) that Liberty Mutual had assumed any liabilities arising out of any such alleged policy.

14. Liberty Mutual was unable to locate any records concerning or addressing the auto insurance policy allegedly

purchased by Swayer from CUNA and which would require Liberty Mutual to provide coverage for any no-fault benefits arising out of Swayer's 1992 accident.

15. Given Liberty Mutual's inability to find any records indicating that it had assumed liability arising out of the CUNA policy allegedly purchased by Swayer, Liberty Mutual's books and records indicated that it was not obligated to pay no-fault benefits to or on behalf of Swayer.

16. Fosmire never advised Liberty Mutual that Swayer had the burden of establishing that Liberty Mutual was obligated to pay no-fault benefits to or on behalf of Swayer.

17. Fosmire never advised Liberty Mutual that the absence of records at Liberty Mutual established that Liberty Mutual was not obligated to pay no-fault benefits to or on behalf of Swayers..

18. During the Underlying Lawsuit, Swayer's lawyer put Fosmire on the defensive, requesting through discovery evidence of Liberty Mutual's purchase of CUNA's book of business and evidence that Liberty Mutual was obligated to pay any no-fault benefits arising out of the auto insurance policy allegedly purchased from CUNA by Swayer.

19. Based on Liberty Mutual's inability to find any records related to the CUNA policy allegedly purchased by Swayer, Liberty Mutual was subject to discovery sanctions, and a discovery sanctions hearing took place in the Underlying Lawsuit on June 5, 2014.

20. In advance of a June 5, 2014 discovery sanctions hearing, Fosmire advised Liberty Mutual that it should stipulate that Liberty Mutual is responsible for any no-fault benefits properly payable under the CUNA policy allegedly purchased by Swayer and which would provide coverage for Swayer's 1992 auto accident.

21. At the June 5, 2014 discovery sanctions hearing, on behalf of Liberty Mutual, Fosmire stipulated that Liberty Mutual was responsible for any no-fault benefits properly payable in connection with Swayer's 1992 auto accident.

22. Pursuant to Fosmire's stipulation, on June 19, 2014, the Court entered an order providing in part:

> It is ordered Liberty Mutual Fire Insurance Company shall be responsible to provide Michigan No Fault Insurance benefits for and on behalf of the Plaintiff Francis Swayer allowed under the Michigan No Fault Insurance Statute MCL 500.3103 et seq. that he may establish arising out of injuries sustained in the 16 October, 1992, motor vehicle accident giving rise to this lawsuit.

23. Case Evaluation in the Underlying Lawsuit took place,

6

and the Case Evaluation award was $50,000 in favor of Swayer against Liberty Mutual.

24. Based on Fosmire's recommendation, Liberty Mutual rejected the Case Evaluation award.

25. The Underlying Lawsuit proceeded to a bench trial on December 8 and 9, 2014. Fosmire represented Liberty Mutual at the bench trial.

26. After the bench trial, the parties were instructed to submit post-trial briefs to the Judge presiding over the Underlying Lawsuit.

27. Fosmire submitted a post-trial brief on behalf of Liberty Mutual. In that brief, in violation of MCR (Michigan Court Rule) 2.403(N)(4), Fosmire disclosed to the Court the Case Evaluation award.

28. As a result of Fosmire's improper disclosure of the Case Evaluation award, Swayer moved for a mistrial, which motion was granted by the Court.

29. As a result of the granting of the mistrial, in addition to exposure on Swayer's claim for no-fault benefits, Liberty Mutual was also exposed to claims for sanctions as a result of the mistrial.

30. Following the granting of the mistrial, a new trial was

scheduled to take place on November 16, 2015.

31. Given Fosmire's wholly substandard performance up to that point in time, Liberty Mutual terminated the representation of Defendants in the Underlying Lawsuit, and Liberty Mutual hired successor counsel to represent Liberty Mutual in the Underlying Lawsuit.

32. Through successor counsel, Liberty Mutual entered into a settlement with Swayer, and a No-Fault Release and Settlement Agreement was signed by Swayer on December 17, 2015 (the "Agreement").

33. Under the Agreement: (a) Liberty Mutual paid Swayer $850,000; (b) Swayer released Liberty Mutual from any claims for attendant care benefits, medical expenses, medical mileage expenses, prescription expenses, medical transportation expenses, attorney fees and interest, and all other allowable expenses for the 1992 accident and incurred through November 12, 2015; (c) Swayer released Liberty Mutual from and further claims for vehicle/van handicapped modifications and wheelchair power lift claims for a period of seven years from November 12, 2015; (d) Swayer released Liberty Mutual from any further claims for home and garage

modifications for a period of ten years from November 12, 2015; and (e) Liberty Mutual agreed to provide after November 12, 2015 no-fault benefits for allowable expenses arising out of Swayer's 1992 accident.

## **LIBERTY MUTUAL'S REIMBURSEMENT CLAIM TO MCCA IS DENIED**

34. During the Underlying Lawsuit, Liberty Mutual made the Michigan Catastrophic Claims Association ("MCCA") aware of the Underlying Lawsuit and Swayer's claim for no-fault benefits.

35. Eventually, in anticipation of a settlement with Swayer, Liberty Mutual made a claim for reimbursement with the MCCA.

36. Ultimately, the MCCA's position was and is that Liberty Mutual would be entitled to reimbursement for certain expenses paid to or on behalf of Swayer if (i) Liberty Mutual established that there was a CUNA/Liberty Mutual auto insurance policy issued to Swayer that provided for coverage of the no-fault benefits sought by Swayer in connection with the 1992 accident and (ii) CUNA and/or Liberty Mutual paid an assessment to the MCCA on that policy.

37. As a result of the MCCA conditions, Liberty Mutual has not obtained reimbursement of any no-fault expenses paid to or on behalf of Swayer.

## **LEGAL MALPRACTICE**

38. As the attorneys for Liberty Mutual in the Underlying Lawsuit, Defendants owed Liberty Mutual the duty to recognize established rules of law and the duty to do that which attorneys of ordinary learning, judgment or skill would or would not do under the same or similar circumstances.

39. Defendants breached duties owed to Liberty Mutual and committed legal malpractice in their representation of Liberty Mutual in the Underlying Lawsuit in at least the following ways:

    a. failing to advise Liberty Mutual that Swayer had the burden of establishing that he was entitled to no-fault benefits from Liberty Mutual arising out of the 1992 accident:

    b. failing to properly respond to discovery requests, exposing Liberty Mutual to discovery sanctions;

    c. failing to take affirmative steps – such as preparing and filing a counterclaim for declaratory relief or a motion for summary disposition with appropriate support – to force Swayer to meet his burden of establishing that Liberty Mutual was obligated to pay no-fault benefits for the 1992 accident under any auto insurance policy allegedly purchased by Swayer from CUNA;

    d. failing to initiate any discovery designed to force Swayer to comply with his burden to establish that Liberty Mutual was obligated to

10

pay no-fault benefits to or on behalf of Swayer;

e. advising Liberty Mutual that it should stipulate that it is responsible for any no-fault benefits that are properly payable under the auto insurance policy allegedly purchased by Swayer from CUNA;

f. disclosing the Case Evaluation award in the post-trial brief submitted in the Underlying Lawsuit; and

g. engaging in other acts of malpractice that may be ascertained during discovery in this matter.

40. But for the acts of malpractice alleged above, Liberty Mutual would have been successful in the Underlying Lawsuit, and it would not have been obligated to pay any no-fault benefits to or on behalf of Swayer.

41. As a direct and proximate result of Defendants' legal malpractice set forth above, Liberty Mutual has incurred at least the following damages: (a) $850,000 it paid to Swayer under the Agreement; (b) future no-fault benefits that it will pay to Swayer under the Agreement; (c) attorney fees and costs paid to Firm to represent it in the Underlying Lawsuit and, specifically, the December 8 and 9, 2014 trial that was declared a mistrial as a result of Defendants' misconduct; (d) attorney fees and costs incurred in paying successor

11

counsel to negotiate a resolution of the Underlying Lawsuit after Liberty Mutual had been put in a damaged position as a result of Defendants' acts of malpractice; and (e) loss of reimbursement from the MCCA of any monies paid to or for the benefit of Swayer.

42. Liberty Mutual's most current estimate of the amount of past and future no-fault benefits it will pay to Swayer is approximately $3 million.

Wherefore, Plaintiff prays for a judgment against Defendants, jointly, awarding:

- a. actual damages in excess of $75,000;
- b. costs, interest and attorney fees; and
- c. exemplary damages as permitted by law.

Respectfully submitted,

EDWARD G. LENNON PLLC

/s/Edward G. Lennon
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: July 10, 2017

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

EDWARD G. LENNON PLLC

/s/Edward G. Lennon
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: July 10, 2017